UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                                                                   CRIMINAL NO. 3:17-CR-150-DPJ-FKB

TERRENCE OMAR GATES

ORDER

Defendant Terrence Omar Gates moves the Court for reconsideration of its order denying his earlier-filed Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A).  Mot. [84]. Gates, who has tested positive for COVID-19 since the Court denied his initial motion for failure to exhaust, says he has now exhausted and presents "extraordinary and compelling reasons" justifying his release to home confinement.  18 U.S.C. § 3582(c)(1)(A).  Because a sentence reduction is not warranted, the Court denies Gates's motion.

I.      Facts and Procedural History

A jury found that Gates violated 18 U.S.C. § 922(g)(1) by being a felon in possession of a firearm.  The Court sentenced Gates on December 18, 2018, to serve 78 months' imprisonment, consecutive to a 24-month term of incarceration imposed upon revocation of Gates's supervised release in case number 3:11-CR-44-WHB-FKB.  According to the Bureau of Prisons (BOP) website, Gates's projected release date is November 2, 2024; Gates has more than 52 months remaining on his 102-month term of incarceration.

Gates, a 33-year-old male, suffers from asthma and chronic bronchitis.  He is incarcerated in the low-security facility at the Federal Correctional Institution at Oakdale, Louisiana (FCI

Oakdale I), a facility that has experienced an outbreak of COVID-19 cases.[1]  Because Gates tested positive, he is presently housed in "a quarantine unit and . . . shar[es] a cell with another COVID-19 positive inmate."  Mot. [42] at 2 n.1.

Gates initially filed a compassionate-release motion on April 22, 2020, and the Court denied that motion without prejudice on May 20, 2020, for failure to exhaust.  In the interim, on April 28, 2020, Gates sent a BP-9 form seeking compassionate release to his warden; as of May 28, 2020—30 days after Gates filed his BP-9 form—Gates had not received a response.  Having waited the appropriate time, Gates now seeks reconsideration of the Court's earlier denial of his compassionate-release motion.  Specifically, he asks the Court to modify the terms of his sentence so that he may serve the remainder thereof under home confinement.  Mot. [84] at 21.

II.     Analysis

Compassionate-release motions arise under 18 U.S.C. § 3582(c)(1)(A)(i), which states:

> The court may not modify a term of imprisonment once it has been imposed except that . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

The Government agrees that Gates has now satisfied the statute's exhaustion requirement.  So the sole question is whether, "considering the factors set forth in [§] 3553(a)," "extraordinary and

---

[1] As of June 10, 2020, FCI Oakdale I reports that one inmate and 10 staff members have active cases of COVID-19.  Seven inmates there have succumbed to the virus, while 182 inmates and 10 staff members have recovered from it.

compelling reasons warrant" a reduction in Gates's sentence, "consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

"United States Sentencing Guideline § 1B1.13 is the applicable policy statement related to compassionate release." *United States v. Dunlap*, No. 1:02-CR-165-1, 2020 WL 2062311, at *1 (M.D.N.C. Apr. 29, 2020). That section—which was adopted before Congress authorized defendants to seek relief under § 3582(c) on their own behalves—"essentially reiterates the requirements of § 3582(c)(1)(A), with the additional requirement that a defendant 'not be a danger to the safety of any other person or to the community.'" *Id.* (quoting U.S.S.G. § 1B1.13(2)). "The application notes to § 1B1.13 provide examples of extraordinary and compelling reasons to grant a compassionate release[.]" *Id.* Application Note 1 states:

> Provided the defendant [is not a danger to the safety of any other person or to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant --
>
> (i) The defendant is suffering from a terminal illness[.]
>
> (ii) The defendant is [suffering from a health condition] that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant -- The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances --
>
> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

>   (D)  Other reasons -- As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, Application Note 1.

As noted, the basis for compassionate release must be "consistent with" this policy statement.  18 U.S.C. § 3582(c)(1)(A)(i).  Here, Gates does not specifically rely on any of these policy provisions, but he does hint at an argument under Application Note 1(A)(ii).  According to Gates, he

> *was* powerless to take the preventative self-care measures directed by the CDC for his high-risk group to remain safe from COVID-19 infection, as Mr. Gates has contracted COVID-19 and is presently suffering from the virus.  He will not be able to take these preventative measures in the future while remaining in BOP custody.

Mot. [84] 17 (emphasis added).  But Application Note 1(A)(ii) applies to conditions from which an inmate "is not expected to recover."  And there is no record evidence—or argument—supporting that requirement.

Gates more generally asserts that the Court is not bound by the precise examples in Application Note 1 and can generally grant relief based on "other reasons."  Mot. [84] at 3 n.2.  Application Note 1(D) allows compassionate release based on "other reasons" when the BOP determines that they exist, but BOP has not made that determination in this case.  That said, several courts have held that Application Note 1(D) no longer applies and that "the Court can determine whether any extraordinary and compelling reasons other than those delineated in [sections A through C of Application Note 1] warrant granting relief."  *United States v. Echols*, No. 3:15-CR-125-1, 2020 WL 2309255, at *2 (N.D. Miss. May 8, 2020) (quoting *United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019)); *see also* Mot. [84] at 3 n.2 (citing *Cantu*).

It *may* be debatable whether courts should construe § 3582(c)(1)(A) as broadly as the courts in cases like *Echols* and *Cantu* did.  It is likewise unclear whether the phrase "consistent with" in § 3582(c)(1)(A) requires strict compliance.  *Compare United States v. Horn*, 679 F.3d 397, 403 (6th Cir. 2012) (holding that "'consistent with' [in prior version of § 3582(c)(2)] require[d] literal compliance with the Commission's policy statements"), *with Envtl. Def. Fund, Inc. v. EPA*, 82 F.3d 451, 457 (D.C. Cir. 1996) (per curiam) (construing phrase "consistent with" in another context as "flexible statutory language" that requires not "exact correspondence . . . but only congruity or compatibility").

Regardless, the Government ignored Gates's legal authority and offered no substantive analysis supporting its position that Application Note 1 to § 1B1.13 must be strictly followed. *See* Resp. [86] at 3.  Given the contrary authority, the intricacies of the issues, and the lack of substantive response, the Court is reluctant to explore these issues further when the Government's two alternative arguments have merit.

Turning to those other arguments, the Government first asserts that Gates's motion is now moot because he has already contracted COVID-19.  *Id.*  Thus, "[a] modification or reduction . . . will not provide [Gates] with the protection sought by his motion—relief from the risk of contracting COVID-19."  *Id.* (citing *United States v. Russo*, No. 16-CR-441-LJL, 2020 WL 1862294, at *8 (S.D.N.Y. Apr. 14, 2020) (denying without prejudice compassionate-release motion where inmate tested positive for COVID-19, concluding that "the Court cannot say that [the defendant]—or other federal prisoners—would be made safer by [his] transfer to a halfway house")).

Gates responds that his diagnosis does not moot his motion because there is "no scientific data to prove that Mr. Gates[] cannot contract the virus again."  Reply [87] at 4.  He further says

"[t]here is little known regarding the last[ing] effects of having had the virus." *Id.* at 4–5.  None of this suggests that Gates is still suffering the effects of COVID-19, which was diagnosed in April 2020.  *Id.* at 4.  And there is no record evidence suggesting that Gates is more susceptible to contracting COVID-19 at this point than any other inmate.

While it is certainly tragic that Gates is among those federal inmates who have contracted COVID-19, the Court cannot say, on this record, that he is at higher risk or would otherwise be better off were he released from incarceration now.  And given his diagnosis, moving Gates out of quarantine and releasing him could pose additional risks to those with whom he comes into contact.  While Gates's circumstances are certainly unfortunate, they do not present "extraordinary and compelling reasons warrant[ing a sentence] reduction."  18 U.S.C. § 3582(c)(1)(A).

To the extent the previous holding presented a close call, the Government's second alternative argument does not.  Even if extraordinary and compelling reasons exist, guideline § 1B1.13 and the § 3553(a) factors weigh against compassionate release in Gates's case.  To begin, § 1B1.13(2)—which § 3582(c) incorporates—states that a sentence may be reduced only when "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  Gates acknowledges this requirement and argues that he has been a good inmate (with one recent slip up), his offense was non-violent, and his "team advised him that his pattern score is low risk for recidivism."  Mot. [84] at 19.

Starting with recidivism, the PSR contradicts Gates's argument.  When Gates was arrested on June 7, 2017, for the crime of conviction—possessing a stolen firearm—he was already on supervised release for another federal weapons charge.  PSR [42] at 4, 11.  And that was not his first probation violation.  Gates's probation was previously revoked as to a 2007

6

drug-related conviction, *id.* at 7, and a 2008 theft conviction, *id.* at 8. His prior convictions—seven in all—often included illegal guns, drugs, theft, and counterfeiting. *Id.* at 7–13. Indeed, there was evidence of drug trafficking when he was arrested in this case. *Id.* at 4. And though he is relatively young, he had already reached criminal-history category V—one short of the maximum—when sentenced for this offense. *Id.* at 18. Finally, it appears that since 2007 there have been few months where he was not incarcerated or on probation. There is a recidivism risk.

As to whether the offense was non-violent as Gates argues, § 1B1.13(2) incorporates by reference 18 U.S.C.A. § 3142(g), which provides factors to determine whether a person is a "danger to the safety of any other person or the community." Among those factors is whether the defendant possessed a firearm. 18 U.S.C.A. § 3142(g). Gates did, and it was not his first time; he has multiple firearm convictions. In addition, the PSR indicates that Gates has faced mental-health issues with violent ideations. PSR [42] at 15. In sum, Gates poses a risk of danger to the community.[2]

Finally, Gates has served just under half of his 102-month term of incarceration. Reducing the sentence as requested would not be sufficient to satisfy § 3553(a)'s requirements, especially given the history and characteristics of the defendant and the need to (1) promote respect for the law; (2) provide deterrence; and (3) protect the public from further crimes. Accordingly, the motion is denied on this alternative basis.[3]

---

[2] Some courts have concluded that the term "safety of the community" refers "not only to the mere danger of physical violence but also to the danger that the defendant might engage in criminal activity to the community's detriment." *United States v. Mackie*, 876 F. Supp. 1489, 1491 (E.D. La. 1994) (reviewing same phrase in 18 U.S.C. § 3148, which, like 1B1.13, incorporates § 3142(g)). That is certainly true here.

[3] It is not the Court's intent to pile on (especially when Gates is apparently sick), but it must make a record explaining why this is not the type of case for which relief was intended.

III.     Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the foregoing reasons, Gates's Motion for Reconsideration [84] is denied.

**SO ORDERED AND ADJUDGED** this the 12th day of June, 2020.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE
